IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| KEVIN RAY MORRIS, Sr. #02132142 | § | |
| v. | § | CIVIL ACTION NO. 6:21cv458 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Kevin Ray Morris, Sr., an inmate of the Texas Department of Criminal Justice (TDCJ) proceeding *pro se*, filed a petition for a writ of habeas corpus and paid the $5 filing fee. The petition was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

### I.     Relevant Background

According to the petition, Petitioner was convicted in Cherokee County, Texas on March 30, 2017, of unspecified crimes for which he was sentenced to multiple life sentences in prison. (Dkt. #1 at 2.) The Twelfth Court of Appeals in Tyler identified Petitioner's convictions as "eleven counts of aggravated sexual assault of a child, ten counts of sexual assault of a child, twelve counts of indecency with a child by sexual contact, and one count of indecency with a child by exposure." *Morris v. State*, No. 12-17-00124-CR, 2018 WL 6321081, at *1 (Tex. App. Dec. 4, 2018). The full extent of his sentences was "imprisonment for life and a $10,000.00 fine in the aggravated sexual assault cases, imprisonment for twenty years and a $10,000.00 fine in the sexual assault and indecency by sexual contact cases, and imprisonment for ten years and a $10,000.00 fine in the indecency by exposure case." *Id.* The Twelfth Court of Appeals affirmed his convictions and sentences on direct appeal on December 4, 2018, with a modification to his fine. *Id.* at *6. In a motion dated February 6, 2019, and received

in the Texas Court of Criminal Appeals on February 11, 2019, Petitioner sought leave to file an out-of-time petition for discretionary review, claiming that he had not learned of the Twelfth Court of Appeals's ruling until January 20, 2019, and had spent the intervening time on a futile attempt to retain counsel. (Dkt. #9-35.) The parties agree that motion was denied on February 11, 2019. (Dkt. #8 at 3; Dkt. #27 at 1.)

Petitioner filed a state application for writ of habeas corpus dated April 1, 2021, and received by the state court on April 5, 2021. (Dkt. #9-37 at 26.) The trial court held a hearing and entered findings of fact and conclusions of law contrary to Petitioner's claims on July 29, 2021. (Dkt. #9-45 at 37–123.) His petition was denied without written order on August 25, 2021. (Dkt. #9-36.)

Petitioner dated his federal habeas petition November 11, 2021. (Dkt. #1 at 11.) Respondent filed an answer asserting that the petition is untimely. (Dkt. #8.) On Petitioner's motion, the Court permitted limited discovery on the issue of timeliness. (Dkt. ##15, 16.) After receiving Respondent's discovery, Petitioner filed a reply. (Dkt. #27.) The matter is fully briefed and ripe for review.

## II.     Law and Analysis

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year limitations period for habeas petitions brought by prisoners challenging state criminal convictions. 28 U.S.C. § 2244(d).  Under this provision, the limitations period runs from the latest of four enumerated events:

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner does not allege any newly-announced constitutional right or newly-discovered

factual predicates as required to trigger subsections (C) or (D) of the statute of limitations. Nor does he allege a total lack of access to AEDPA that actually prevented him from filing a timely federal habeas petition to proceed under subsection (B). *See Egerton v. Cockrell*, 334 F.3d 433, 438-39 (5th Cir. 2003) ("The State's failure to make available to a prisoner the AEDPA, which sets forth the basic procedural rules the prisoner must follow in order to avoid having his habeas petition summarily thrown out of court, including the newly imposed statute of limitations, is just as much of an impediment as if the State were to take "affirmative steps" to prevent the petitioner from filing the application.").

Accordingly, Petitioner's limitations period began to run under subsection (A) on January 3, 2019, when his conviction became final upon expiration of his time to petition for discretionary review in the Texas Court of Criminal Appeals. Tex. R. App. P. 68.2(a). AEDPA gave him one year from that date—until January 3, 2020—to file a timely federal habeas petition. Accordingly, Petitioner's November 2021 filing can only be deemed timely if he benefits from some type of tolling of the limitations period.

AEDPA provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). But Petitioner did not file his state habeas petition until April 2021—more than a year after his AEDPA limitations period had expired. A collateral review petition filed in state court after the AEDPA limitations period expired could not toll or restart that limitations period. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (holding that "Scott's state habeas application did not toll the limitation period under §2244(d)(2) because it was not filed until after the period of limitation had expired").

AEDPA's one-year limitations period may also be subject to equitable tolling in extraordinary cases. *Davis v. Johnson*, 158 F.3d 806, 807 (5th Cir. 1998). Equitable tolling is a discretionary doctrine

turning on the facts and circumstances of each case, and a petitioner bears the burden of establishing entitlement to equitable tolling in the AEDPA context. *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). To be entitled to equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (citation and internal quotation marks omitted). Equity does not benefit those who sleep on their rights. *Fisher v. Johnson* 174 F.3d 710, 715 (5th Cir. 1999); *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999), *abrogated on other grounds by Causey v. Cain*, 450 F.3d 601, 605–06 (5th Cir. 2006).

In response to inquiry on his habeas petition form about timeliness, Petitioner responded "ineffective assistance of appellate counsel/heart surgery/covid-19 quarantine/state court interference." (Dkt. #1 at 10.) After Respondent asserted in his response that the petition was untimely (Dkt. #8), Petitioner indicated that relevant records would establish that he is entitled to equitable tolling. Specifically, Petitioner asserted that

> [H]e is entitled to equitable tolling based on the fact that at times relevant to this issue Petitioner was physically incapacitated due to surgery and constant back-and-forth medical transport. Petitioner also intends to show that his delay in meeting AEDPA time constraints were also caused by State created impediments, including delays in the prison officials returning Petitioner's property, including legal records.

(Dkt. #10.) He later sought discovery of medical records, prison mail logs, and transit records that he asserted would establish circumstances entitling him to equitable tolling. (Dkt. #14.) The Court granted limited discovery, and Respondent produced thousands of pages of materials sought by Petitioner. (Dkt. ##15, 17, 19, 22.)

In his reply, filed after receipt of Respondent's discovery, Petitioner complains that he did not receive timely notice of the Twelfth Court of Appeals's December 2018 ruling on his direct appeal,

which is why his attempt to seek discretionary review in the Court of Criminal Appeals was late. (Dkt. #27 at 1.) But Petitioner had clearly learned of the ruling somehow by February 6, 2019, the date of his motion to file an out-of-time petition. Any short delay in his learning of that ruling cannot explain why he waited more than two and a half more years to file his federal habeas petition.

Petitioner also appears to dispute his receipt of the Texas Court of Criminal Appeals's February 11, 2019 denial of leave to file an out-of-time petition for discretionary review. (Dkt. #27 at 1.) He observes that Clements Unit mail logs indicate that mail to him from the Court of Criminal Appeals was received February 15, 2019, and delivered to him on February 26, 2019, but that his medical records establish that he was receiving inpatient care in a medical unit "on 2-15-19." (*Id.* at 1; Dkt. #27-1 at 2; Dkt. #27-2 at 2–3.) Specifically, the medical records attached to Petitioner's reply indicate that he was admitted to the Montford Unit for an "Inpatient Facility Short Stay Admission" on February 12, 2019, and "discharge communication" was entered on February 19, 2019. (Dkt. #27-2 at 2–3.) The Court sees no conflict in these records. The records as a whole are consistent with the receipt of the Texas court's ruling at Petitioner's assigned unit on February 15, 2019, where it was held and delivered to him on February 26, 2019, after he returned from the medical facility.

Finally, Petitioner asserts for the first time that he attempted to mail a state habeas petition on September 23, 2019, but that it somehow disappeared and never arrived at the trial court, which he only discovered on August 28, 2020. (Dkt. #27 at 2.) Due to Covid lockdowns imposed by that time, as well as Petitioner's own illness from Covid, he says it took him until April 1, 2021, to reassemble the necessary files and prepare and submit another state habeas petition. (*Id.*) But even assuming the truth of this assertion, it has no bearing on why Petitioner failed to file his *federal* habeas petition at any point throughout that time. He clearly knew sometime before September 2019, according to his own timeline, that his direct appeal had become final, and he knew by August 2020 that he did not

5

have a pending state habeas petition. But he still waited until November 2021 to file his federal petition. That does not establish the diligence required to merit equitable tolling.

To the extent Petitioner might believe that his delay in filing his federal petition is excused by the requirement that he exhaust his claims in state court first, he is mistaken. When a petitioner faces a known delay in state court while his AEDPA limitations period is running, he must file a protective federal petition and, if necessary, seek a stay of federal proceedings while he exhausts his state remedies. *See Madden v. Thaler*, 521 F. App'x 316, 321 (5th Cir. 2013) ("Aware that the limitations period was running, and that he could not file a state application due to the absence of a new mandate, Madden could have filed a protective federal habeas petition with a motion to stay."). Petitioner, who was aware of the alleged state-created delay in the filing of his state habeas petition by at least August 2020, still failed to promptly file a protective petition in federal court and waited more than another year to file his federal petition.

Petitioner asserts that the disappearance of his first habeas petition is a state-created impediment to filing, relying on *Critchley v. Thaler*, 586 F.3d 318 (5th Cir. 2009), in which the Fifth Court held a federal habeas petition timely where there was no way the petitioner "could have known to file such a [protective] petition until he became aware that his state application had not been filed." *Id.* at 321. But there was evidence in *Critchley* to prove the petitioner's claim of thwarted attempts to file state habeas petitions: mail records confirmed that the petitioner had mailed packages from the prison mailroom to the state court clerk on the dates he claimed to have submitted missing state habeas petitions; state records showed that the state court had received his final petition in December 2004 but had neglected to file it until April 2005; and the federal court was aware of "several other cases in which state habeas petitioners have similarly had their pleadings not filed by the Hays County District Clerk." *Id.* at 319. It was this proven "failure [by the state court] to process that application and others by Critchley,

coupled with its apparent failure to process petitions filed by other prisoners" that was found to constitute a state-created impediment that tolled Critchley's AEDPA limitations period. *Id.* at 320.

Petitioner—who bears the burden of establishing that he is entitled to tolling—has not produced any similar evidence in this case. His vague allusion to a "scandal" over lost and missing mail at the Clements Unit does not carry his burden. And he has not, for example, produced a copy of the state petition he claims to have mailed in September 2019, or copies of any communications with the state court about the status or disappearance of that petition. In his April 2021 state habeas petition, he answered "no" to whether he had previously filed a state habeas petition challenging his conviction. (Dkt. #9-37 at 3.) And he did not raise the issue of a missing state habeas petition as a basis for tolling in either his federal petition (Dkt. #1 at 10) or his motions for extension or for discovery to prove a basis for tolling. (Dkt. ##10, 13, 14.) To the contrary, the latter motion clearly conveys that Petitioner sought to blame health issues and the delay in learning of the conclusion of his direct appeal for all his own subsequent delays:

> Petitioner through his medical records intend to show that due to State created impediments circumstances were such that Petitioner was not informed in a timely manner that his direct appeal had been ruled on, and this failure on the State's part created a snowball effect which impeded Petitioner's ability to file his postconviction filings within the timelines of State and federal regulations.

(Dkt. #14 at 1.) Petitioner also did not contest Respondent's motion to limit his production of mail logs in a way that prevented any proof of the existence or absence of the communications Plaintiff purports to have had about the missing state habeas petition, nor did he seek any reconsideration of the Court's decision to grant that motion. (Dkt. ##16, 17.) Petitioner's new, self-serving, and unsupported claim of a missing habeas petition is not enough to merit tolling in this case.

Alternatively, even if the Court were to find Petitioner's limitations period tolled for the period from September 23, 2019, when he claims to have first filed a state habeas petition, until August 28,

2020, when he learned that no such petition was pending, that would not be enough to make his federal petition timely. From January 3, 2019, when his conviction became final, to September 23, 2019, 263 days of his one-year limitations period ran. From August 28, 2020, when he learned his state petition had not been filed, to April 1, 2021, when he successfully filed a state habeas petition, another 216 days ran. And between the denial of his state habeas petition on August 25, 2021, until the November 11, 2021 filing of his federal petition was another 78 days. Even limiting the running of his limitations period to those windows results in his filing his federal petition on day 557—more than 190 days late.

Petitioner's only other explanation for his delay is Covid, but courts in this district have repeatedly found that prison lockdowns, including Covid-related lockdowns, are not exceptional circumstances that would justify equitable tolling. *See Collins v. United States*, No. A-18-CR-091(5)-RP, 2022 WL 3593056, at *6 (W.D. Tex. Aug. 22, 2022) (" The undersigned finds that the Covid-19 pandemic and the restrictions on petitioner's library access are insufficient to warrant equitable tolling."); *United States v. Pizarro*, No. CR 16-63, 2021 WL 76405, at *2 (E.D. La. Jan. 8, 2021) (finding that a COVID-19 lockdown did not justify equitable tolling as it did not actually prevent the petitioner filing his habeas petition); *Coppin v. United States*, 3:10-CR-345-K(1), 2018 WL 1122175, at *4 (N.D. Tex. Mar. 1, 2018) (finding a series of lockdowns did not constitute an extraordinary circumstance that prevented movant from filing Section 2255 motion); *see also Tate v. Parker*, 439 F. App'x 375, 376 (5th Cir. 2011) (finding that ignorance of the law, lack of knowledge of filing deadlines, a claim of actual innocence, temporary denial of access to research materials or the law library, and inadequacies in the prison law library were are not extraordinary circumstances sufficient to warrant equitable tolling). "An institutional lockdown alone is generally not a rare and exceptional circumstance which warrants equitable tolling." *Collins*, 2022 WL 3593056, at *6 (citing *Lewis v. Casey*, 518 U.S. 343, 362 (1996)). And Petitioner has not presented any evidence that any of his own

illnesses during the relevant time period were debilitating enough for long enough to have prevented him from filing a petition in this Court.

Petitioner filed his federal habeas petition too late by any calculation, and the evidence does not establish that an extraordinary circumstance or state-created impediment actually prevented him from filing a timely federal petition. His Section 2254 petition is therefore untimely and must be dismissed on that basis.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A district court may deny a certificate of appealability *sua sponte* because the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

To obtain a certificate of appealability, the petitioner must make a substantial showing that the petitioner has been denied a federal right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). To do this, he must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *James v. Cain*, 50 F.3d 1327, 1330 (5th Cir. 1995).

When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the prisoner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Jurists of reason would not find it debatable whether this Court's procedural ruling in this case is correct. As a result, Petitioner is not entitled to a certificate of appealability.

## RECOMMENDATION

It is accordingly recommended that this action be dismissed with prejudice as barred by the applicable statute of limitations and that a COA be denied *sua sponte*.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

So ORDERED and SIGNED this 31st day of January, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE